The STATE of Texas, Appellant,

v.

Mark NAILOR, Appellee.

No. 04–96–00804–CR.

Court of Appeals of Texas,
San Antonio.

May 7, 1997.

Kimberly E. Young, San Antonio, for Appellee.

James Scott Sullivan, Assistant Criminal District Attorney, San Antonio, for Appellant.

Before RICKHOFF, STONE and DUNCAN, JJ.

## OPINION

STONE, Justice.

The State appeals from the granting of a motion to suppress physical evidence. In an interlocutory appeal pursuant to article 44.01(a)(5) of the Texas Code of Criminal Procedure, the State contends that the trial court applied an incorrect legal standard. For the following reasons, we reverse and remand.

**358**

## Facts

■ Mark Nailor was arrested in the Holiday Inn Riverwalk parking lot located on St. Mary's Street in downtown San Antonio for driving while intoxicated. Claiming that his arrest was illegal because it was made without a warrant and without probable cause, Nailor filed a motion to suppress physical evidence obtained from the arrest. Under article 14.01(a) of the Texas Code of Criminal Procedure, an officer may arrest a person without a warrant if the person commits a class one felony offense or an offense against the public peace within the officer's presence. Driving while intoxicated occurs when a person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (Vernon 1994). Being intoxicated in a public place is a breach of the peace. *Romo v. State*, 577 S.W.2d 251, 253 (Tex.Crim.App.1979).

The following evidence was elicited at the suppression hearing: Santos Hernandez, a Holiday Inn security officer, was informed by a valet driver that an individual, later identified as Nailor, "staggered" down a hallway and entered the parking garage. Entering the parking garage, Hernandez heard screeching tires, entered the third floor, and witnessed Nailor in a late model Lincoln driving in loops around the third floor. Nailor was driving at a high rate of speed and narrowly missing parked vehicles. Hernandez unsuccessfully attempted to stop Nailor with verbal commands and by blowing a whistle at him. Nailor momentarily stopped the vehicle when he hit a high curb. Hernandez approached the stopped Lincoln, banged on the window, and instructed Nailor to turn off the vehicle. Ignoring this request, Nailor sped forward, forcing a Holiday Inn employee to jump out of his path, and drove to the exit gate where he was met by San Antonio police officer, Anthony Johnson.

Officer Johnson appeared at the Holiday Inn in response to a DWI report. Nailor was sitting in the stopped Lincoln at the exit gate when Officer Johnson approached him. Nailor exited his vehicle and Officer Johnson observed the typical indications of intoxication. Nailor was unsteady on his feet, smelled of intoxicants, and his eyes were bloodshot. Hernandez informed Officer Johnson that Nailor was driving and had narrowly missed hitting several parked vehicles. Officer Johnson administered two field sobriety tests. Based on Nailor's performance of the tests, Hernandez's observations, and his training and personal observations of Nailor, Officer Johnson determined that Nailor was intoxicated and arrested him for driving while intoxicated.

Officer Johnson and Hernandez both testified that the Holiday Inn parking garage was a public place; access is not restricted to hotel guests. The parking lot is open twenty four hours a day and is used by individuals coming downtown for shopping or dining. Even though the parking lot is Holiday Inn's private property, anyone with a vehicle who wants to park in the lot is permitted. In fact, Hernandez testified that Holiday Inn advertises for monthly parking permits and rents monthly spaces to Southwestern Bell employees. Hernandez described the parking garage as a six level lot with a single exit and entrance located at the street level. Generally, payment is required to park in the garage, although occasionally the cashier is not present and individuals may exit without paying.

Relying upon *Rouse v. State*, 651 S.W.2d 736, 738 (Tex.Crim.App.1982) (finding that McDonald's parking lot was public road), *Harris v. State*, 499 S.W.2d 9, 10–11 (Tex.Crim.App.1973) (determining that privately owned parking lot was not public road), and *Kapuscinski v. State*, 878 S.W.2d 248, 250 (Tex.App.—San Antonio 1994, pet. ref'd) (holding that mall parking lot is public place), appellee argued that the parking lot was not public and, therefore, Officer Johnson had no legal basis to arrest Nailor. At the conclusion of the hearing, the trial court granted the motion to suppress based on the finding that the Holiday Inn parking garage was not a public place.

## Standard of Review

■ In a suppression hearing, the trial court is the sole trier of fact and the arbiter of the legal and historical significance of those facts. *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App.1996). The trial

court is free to accept or reject any or all of the offered evidence. *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex.Crim.App.1993). We do not engage in our own factual review; but determine only if the record supports the trial court's findings. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). Reversal is appropriate only when the trial court abused its discretion; that is, only when it appears that the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion. *DuBose,* 915 S.W.2d at 497–98.

■ A public place is defined as *any place* to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops. Tex. Penal Code Ann. § 1.07(a)(40) (Vernon 1994) (emphasis added). As noted, there was undisputed evidence before the trial court that the Holiday Inn parking lot is open to the public twenty four hours a day and is considered a public place. Individuals coming downtown for shopping and dining frequently park in the garage. Further, Holiday Inn advertises for and rents monthly parking permits to downtown business people. Clearly, Holiday Inn's parking lot is open to the public and, in fact, Holiday Inn solicits the public to use it.

■ In *Kapuscinski,* this court held that a mall parking lot was a public place as contemplated by section 1.07(a)(40) of the Texas Penal Code. *Kapuscinski,* 878 S.W.2d at 250. In so holding, it was noted that the individual drove onto the lot provided for guests at the nightclub. *Id.* The lot was described as having "traffic" lanes. *Id.* In the instant case, the trial court distinguished the facts of the instant case from the facts of *Kapuscinski* when it announced its decision. Specifically, the trial court stated:

> Central Park Mall is a big wide open lot.... Anyone can drive off the street, drive into the parking lot.... [The Holiday Inn's parking lot] is not a common area. This is an area where you have to pay to go in.... It's not a commonly

accessible parking lot in my view point like the one at Central Park.

These distinctions are without legal significance. First, that a lot is wide and open verses enclosed is irrelevant to the determination of whether the place is one to which the public has access. The relevant inquiry is whether the public can enter the premises. Second, a place can be public, despite the requirement of an entrance fee. *See Lozano v. State,* 650 S.W.2d 137, 139 (Tex.App.— Houston [14th Dist.] 1983, no pet.) (determining that theater was public place within meaning of section 1.07 of Penal Code).

Appellee relies upon *Rouse v. State,* 651 S.W.2d 736 (Tex.Crim.App.1982), *Harris v. State,* 499 S.W.2d 9 (Tex.Crim.App.1973), and *Schmitt v. State,* 825 S.W.2d 549 (Tex.App.— Beaumont 1992, no writ), to argue that the trial court properly determined that the parking lot at issue was not a public place. *Rouse* and *Harris* are inapplicable to the instant case because they occurred prior to the current version of the statutory definition of driving while intoxicated. In 1983, the statutory definition of driving while intoxicated, which previously involved driving on a public road or highway, was amended to state driving on any public place. Act of May 17, 1953, 53rd Leg., R.S., ch. 167, 1953 Tex. Gen. Laws 480, *amended by* Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1575. *Schmitt* is similarly inapplicable to the instant case because the offense at issue was driving without an operator's license which involves driving on a public street.

As this court noted and emphasized in *Kapuscinski,* the definition of public place is cast in broad language. *Kapuscinski,* 878 S.W.2d at 250. In the instant case, the undisputed evidence before the trial court was that the Holiday Inn parking lot operates in a manner in which access is granted to the public, and thus, it falls squarely within the definition of a public place. *See* Tex. Penal Code Ann. § 1.07(a)(40) (Vernon 1994). Having found that the trial court applied an erroneous legal standard, the judgment of the trial court is reversed and the cause is

remanded to the trial court for further proceedings.