ACCEPTED
03-14-00334-CR
7575570
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/28/2015 11:36:08 AM
JEFFREY D. KYLE
CLERK

**No. 03-14-00334-CR**

In the Third Court of Appeals
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/28/2015 11:36:08 AM
JEFFREY D. KYLE
Clerk

**TERAN PENNICK,**

*Appellant,*

**v.**

**THE STATE OF TEXAS,**

*Appellee.*

On appeal from the County Court-at-Law Number Six,
Travis County, Texas
Trial Cause No. C-1-CR-13-200027

# STATE'S BRIEF

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

GISELLE HORTON
ASSISTANT TRAVIS COUNTY ATTORNEY
State Bar Number 10018000
Post Office Box 1748
Austin, Texas 78767
Telephone: (512)854-9415
TCAppellate@traviscountytx.gov

*October 28, 2015*          ATTORNEYS FOR THE STATE OF TEXAS

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE STATE'S ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT

    *Reply Point One*: If the point is preserved and presents
    anything for review, the volunteered statements
    were admissible.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Pennick's contentions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    The standard of review and general legal principles. . . . . . . . . . . . . . 8

    The trial objection.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    Pennick failed to preserve error for review. . . . . . . . . . . . . . . . . . . . . 10

    If Pennick preserved error, his first point presents
    nothing for review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    Furthermore, Pennick's statements, whatever they were,
    were admissible against him at trial because they
    were volunteered. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Reply Point Two*: The evidence is legally sufficient to sustain the judgment of conviction for driving while intoxicated. . . . . . . . . . . . . 13

Pennick's first legal-sufficiency question: Was the evidence legally insufficient because the testimony regarding his intoxication when he drove off to shoot fireworks was somewhat conflicting?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Pennick's second legal-sufficiency question: Was the ditch in which the highly intoxicated Pennick was found a public place?. . . 15

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# INDEX OF AUTHORITIES

**Constitutional**                                                                                    **Page**

U.S. CONST. Amend. V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**

TEX. CODE CRIM. P. art. 38.21
     (West 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
TEX. CODE CRIM. P. art. 38.22 § 5
     (West Supp. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13
TEX. PENAL CODE § 1.07(a)(40)
     (West Supp. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
TEX. PENAL CODE § 49.04(a)
     (West Supp. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Rules**

TEX. R. APP. P. 33.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
TEX. R. APP. P. 38.1(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
TEX. R. EVID. 101(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
TEX. R. EVID. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Cases**

*Alvarado v. State*, 912 S.W.2d 199
     (Tex. Crim. App. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
*Gigliobianco v. State*, 210 S.W.3d 637
     (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Jackson v. Virginia*, 443 U.S. 307
     (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Kindle v. State*, No. 05-01-01818-CR, 2003 Tex. App. LEXIS 9774
     (Tex. App.—Dallas Nov. 18, 2003, no pet.)
     (mem. op., not designated for publication). . . . . . . . . . . . . . . . . . 17
*Kirtley v. State*, 585 S.W.2d 724
     (Tex. Crim. App 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kotaska v. State,* No. 03-01-00438-CR, 2002 Tex. App. Lᴇxɪs 2549
(Tex. App.—Austin April 11, 2002, no pet.)
(not designated for publication).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Lape v. State,* 893 S.W.2d 949
(Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). . . . . . . . . . . . . . . 12
*Merritt v. State,* 368 S.W.3d 516
(Tex. Crim. App. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Montgomery v. State,* 810 S.W.2d 372
(Tex. Crim. App. 1991) (op. on rehearing). . . . . . . . . . . . . . . . . . . . . . 8
*Murray v. State,* 457 S.W.3d 446
(Tex. Crim. App. 2015).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Perry v. State,* 991 S.W.2d 50
(Tex. App.—Fort Worth 1998, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . 17
*Rhode Island v. Innis,* 446 U.S. 291
(1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Sanchez-Tapia v. State,* No. 07-14-00203-CR, 2015 Tex. App. Lᴇxɪs 2273
(Tex. App.—Amarillo March 10, 2015, pet. ref'd)
(mem. op., not designated for publication). . . . . . . . . . . . . . . . . . . . . . 16
*Torres v. State,* 979 S.W.2d 668
(Tex. App.—San Antonio 1998, no pet.). . . . . . . . . . . . . . . . . . . . . . . 11
*Woodruff v. State,* 899 S.W.2d 443
(Tex. App.—Austin 1995, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . 16, 17
*Wyatt v. State,* 23 S.W.3d 18
(Tex. Crim. App. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iv

This is a defense appeal from a jury conviction for an enhanced misdemeanor DWI offense,[1] alleged to have been committed on January 1, 2013.[2] CR 11, 42. On May 7, 2014, the trial court assessed punishment and sentenced Pennick to one year's confinement in the Travis County Jail and a $4,000 fine, but suspended imposition of this sentence and placed Pennick on community supervision for two years. CR 57–60 (judgment nunc pro tunc). Pennick gave written notice of appeal on May 19, 2014. CR 51.

## ISSUES PRESENTED

*Issue One*: State's Exhibit #4 is a recording taken from the arresting officer's dashboard video camera. The trial court admitted the entire exhibit over the defense relevancy objection. Does Rule 403 require the

---

[1]  "A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE § 49.04(a) (West Supp. 2014).

[2]  The information's enhancement paragraph alleged, and the jury found, that Pennick had a blood-alcohol concentration of 0.15 or more at the time the analysis was performed. CR 11, 42.

1

court to exclude Pennick's numerous "derogatory and inflammatory" statements about and to the arresting officer contained in State's Exhibit #4?

*Issue Two*: When police arrived, the intoxicated Pennick was in the driver's seat of a car, engine running and wheels spinning, trying to extricate it from a muddy drainage ditch at the side of the road. Is the evidence legally insufficient to sustain the judgment because (1) the testimony regarding Pennick's intoxication when he actually drove on a public roadway is conflicting; or because (2) the ditch in which he was found—operating a car and indisputably intoxicated—was not a public place?

## BACKGROUND

Teran Pennick and his girlfriend, Shaunna Johnson, arrived at a New Year's Eve party at around five o'clock p.m. 3 RR 26. Johnson's niece, Chassie Nuckols, was there, too. 3 RR 27. Pennick drank beer and margaritas during most of his time at the party. 3 RR 27.

They all left about six hours later, around 11:00 p.m. 3 RR 27. Pennick dropped Johnson off at Nuckols' house, then drove Johnson's car to go shoot off fireworks with friends. 3 RR 30; 4 RR 28. When Pennick did not return before midnight, Johnson and Nuckols set out to find him. 3 RR 31; 4 RR 16.

They found him behind the wheel of Johnson's car, engine running and tires spinning in the mud in a drainage ditch next to the road. 3 RR 31, 59; 4 RR 16. Johnson and Pennick began to argue heatedly. 4 RR 17. About twenty minutes after midnight, Johnson called the police, who arrived six minutes later. 3 RR 55.

When Travis County Sheriff's Deputy Orts got there, Pennick was "ranting and raving; screaming; walking around; [he] didn't seem to be oriented to what was going on." 3 RR 60. When the deputy asked Pennick to come talk to her, he cursed her. 3 RR 61. He approached Orts in an aggressive manner, body forward and arms bowed. 3 RR 61. "He was coming at me with a look that I felt he was about to assault me." 3 RR 61.

3

He also had his hand in his waistband—"always a hazard"—as though he were concealing a weapon. 3 RR 61.

Orts told Pennick to back away and get on the ground. She warned him at least twice that he could be tased if he did not. 3 RR 62. When Pennick continued to advance on her, she feared for her safety and tased him from a range of ten to twelve feet. 3 RR 62. She tased him a second time when he still would not comply with her commands. 3 RR 62. Afterwards, Pennick's emotional state was much as before: extreme anger and aggression. But now, extreme vulgarity and acrimonious name-calling directed at Orts were tempered with apologies and brief, occasional bouts of crying. 3 RR 66; *see, e.g.,* 6 RR State's Exhibit #4 @ 32:52–34:30, 41:51–42:18, 1:15:15–1:15:45. Pennick told the deputy several times that he had been driving, and that he was the one who had driven the car into the ditch. 3 RR 111; 6 RR State's Exhibit #4 @ 38:50, 39:40, 1:09:35. Pennick also admitted that he had been drinking that night. 3 RR 79; 6 RR State's Exhibit #4 @ 1:09:35.

After Pennick refused to provide a breath or blood sample, Orts secured a warrant to draw a blood sample. 3 RR 67–68. His blood was drawn while he was in a restraint chair, at 3:59 a.m. on January 1, 2013—about three and a half hours after police first encountered him. 3 RR 122. Analysis showed a blood-alcohol content of 0.157. 3 RR 154.

## SUMMARY OF THE STATE'S ARGUMENT

*Summary of Reply Point One*: Pennick's first point is waived for two reasons. First, he failed to preserve the point for review because his trial relevancy objection to certain statements in State's Exhibit #4 fails to comport with his Rule 403 contention on appeal.

Additionally, Pennick waived his first point because it presents nothing for review. He complains of the trial court's admitting "a number of derogatory and inflammatory statements aimed at and about the arresting officer in this case[,]" but fails to apprise the Court of the specific statements at issue or where in State's Exhibit #4 they may be found. Pennick therefore asks the Court not only to do his work for him but also to do the impossible: to comb through the hundred of statements in the

5

exhibit and detect those that, in counsel's estimation, are "derogatory and inflammatory."

Even if Pennick had not waived the point, virtually all of his statements on State's Exhibit #4 were volunteered and hence admissible under constitutional and statutory provisions.

*Summary of Reply Point Two*: Pennick's two legal-sufficiency arguments rely on (1) a defense-favorable view of one shred of conflicting intoxication testimony, and (2) appellate counsel's speculation that the ditch in which he was found might have been private property. These arguments misapply the standard of review. Viewing the evidence in the light most favorable to the verdict, any rational trier could have found beyond a reasonable doubt that (1) Pennick was intoxicated while operating a motor vehicle (2) in a public place.

*Reply Point One*: **If the point is preserved and presents anything for review, the volunteered statements were admissible.**

**Pennick's contentions**

Pennick contends that the trial court abused its discretion in admitting, over his Rule 403 objection, certain undisclosed portions of State's Exhibit #4. He states:

> The Appellant made a number of derogatory and inflammatory statements aimed at and about the arresting officer in this case. (R.R. III 73-78). These statements were made following the use of a taser by the officer on the Appellant. (R.R. III 56-64). These statements for the most part were not made in reaction to any questions by the arresting officer, but freely made by the Appellant.

Pennick's Brief, p. 8. He speculates that the derogatory and inflammatory statements "very probably" negatively affected the jurors' opinion of him. Pennick's Brief, pp. 7, 9. He reasons that the statements were inadmissible because, with all the other intoxication evidence at the State's disposal, the statements were "not particularly probative[.]" Pennick's Brief, pp. 9–10.

**The standard of review and general legal principles**

Rulings on the admission of evidence are reviewed under the abuse-of-discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on rehearing). Rule 403 sets out when, in its discretion, a trial court may exclude relevant evidence for unfair prejudice, confusion, or other reasons.

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

TEX. R. EVID. 403.

When undertaking a Rule 403 analysis, a trial court must balance (1) the inherent probative force of the proffered items of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the

8

likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State,* 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

**The trial objection**

At trial, the defense objected to

> the playing of the audio during this segment where he calls [the deputy] all kinds of names. I don't think it is relevant to intoxication. . . . [The prosecutor wants] to introduce it, if I understand right, for signs of intoxication. We are saying it is just prejudicial to get the jury to hate him.

3 RR 74. The prosecutor responded that the admissions and the comments were admissible to show intoxication, and were volunteered statements made after arrest. "Of course it is prejudicial, Your Honor. This is a DWI case and we intend to show that the defendant was intoxicated." 3 RR 75. The prosecutor also argued that, because defense counsel had alluded in opening statement to an unreasonable use of police force, State's Exhibit #4 was the best evidence of Pennick's demeanor when considering whether the force used was reasonable. 3 RR 76. After the parties explained the

9

"gist" of the statements and admissions, the trial court remarked that the State had the stronger argument. 3 RR 78.

**Pennick failed to preserve error for review.**

Pennick did not invoke Rule 403 at trial, but instead objected to the name-calling portion of State's Exhibit #4 on relevancy grounds. Counsel's mere remark that the statements were prejudicial and that the State had other intoxication evidence would not have put a trial court fairly on notice that the statements' probative value was substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. *Kotaska v. State*, No. 03-01-00438-CR, 2002 Tex. App. LEXIS 2549, at *7 (Tex. App.—Austin April 11, 2002, no pet.) (not designated for publication). Because the contention on appeal does not comport with the trial objection, nothing is preserved for review. TEX. R. APP. P. 33.1(a); *Id.*

**If Pennick preserved error, his first point presents nothing for review.**

Pennick contends that "the inflammatory statements" were erroneously admitted. This gives the reader nothing to analyze under *Gigliobianco.* Which of the hundreds of statements in State's Exhibit #4 does Pennick believe are "inflammatory" and inadmissible? The reader must simply guess at this.

Pennick is implicitly asking this Court to forsake its role as a neutral arbiter and become an advocate for the defense by combing through the exhibit and making specific arguments for him. But reviewing courts decline to do this. *Wyatt v. State*, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000). The rules of appellate procedure require the appellant either to set out the complained-of statements or to point to the place in State's Exhibit #4 where they may be found. TEX. R. APP. P. 38.1(i). Because Pennick has not done so, his first point presents nothing for review and is waived. *Id.*; *Alvarado v. State,* 912 S.W.2d 199, 210 (Tex. Crim. App. 1995); *Torres v. State,*

11

979 S.W.2d 668, 671 (Tex. App.—San Antonio 1998, no pet.); *Lape v. State,*

893 S.W.2d 949, 953 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd).

**Furthermore, Pennick's statements, whatever they were, were**

**admissible against him at trial because they were volunteered.**

Pennick admits that the statements "for the most part were not

made in reaction to any questions by the arresting officer, but freely made

by the Appellant." Pennick's Brief, p. 8. Thus, even though we cannot tell

exactly which volunteered statements Pennick believes should have been

redacted from State's Exhibit #4, a criminal defendant's volunteered

statements are admissible against him at trial under the Constitution and

Texas statutes. U.S. CONST. Amend. V; TEX. CODE CRIM. P. arts. 38.21, 38.22

§ 5 (West 2005 & Supp. 2014);[3] *Rhode Island v. Innis,* 446 U.S. 291, 299 (1980).

---

[3]     A statement of an accused may be used in evidence against him if it
        appears that the same was freely and voluntarily made without
        compulsion or persuasion, under the rules hereafter prescribed.

TEX. CODE CRIM. P. art. 38.21.

12

The Constitution and statutes take precedence over the rules of evidence.

TEX. R. EVID. 101(c). The trial court therefore did not abuse its discretion in

admitting the statements.

>    *Reply Point Two*: **The evidence is legally sufficient to sustain the judgment of conviction for driving while intoxicated.**

Pennick's second point of error contends that the evidence is legally

insufficient "to show that probable cause existed that appellant operated a

motor vehicle in a public place while intoxicated." Pennick's Brief, p. 11.

The clerk's record does not show that Pennick litigated probable cause

below or filed a motion to suppress the State's evidence on grounds that

police lacked probable cause to arrest.

---

> Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, . . . or of a statement that is res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law.

TEX. CODE CRIM. P. art. 38.22 § 5.

**Pennick's first legal-sufficiency question: Was the evidence legally insufficient because the testimony regarding his intoxication when he drove off to shoot fireworks was somewhat conflicting?**

Pennick makes two specific legal-sufficiency arguments. First, he contends that he was "clearly in a public place when he drove to [the] location on New Katy Lane. What is not clearly shown is that [he] was intoxicated during the time he was clearly operating a vehicle in a public place[,]" because the evidence of intoxication was conflicting. Nuckols testified that Pennick was intoxicated when he left to go shoot off fireworks; Johnson implied that he was not intoxicated when she testified that she never would have lent him her car if he had been. Pennick's Brief, pp. 13–14.

Viewing the evidence in the light most favorable to the verdict, any rational trier could have found that Pennick was intoxicated when he operated a motor vehicle in a public place. Nuckols testified that Pennick was intoxicated when he left the New Year's Eve party, and that his girlfriend freely gave him the keys to her car even though he was drunk. 3

RR 41. The jury is presumed to have resolved all conflicts in favor of the verdict, and the court defers to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (jury is the sole judge of credibility and weight to be attached to witness testimony). Furthermore, the intoxilyzer expert estimated that Pennick was somewhere in the .192 to .262 breath-alcohol content range when he first came into contact with the police. 3 RR 158. The jury therefore could have inferred that he was intoxicated about an hour and twenty minutes before that, when he left the New Year's Eve party. 3 RR 158. Pennick's first contention under his legal-sufficiency point of error fails to view the evidence in the light most favorable to the verdict, as the standard of review requires. *Jackson*, 443 U.S. at 319; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

**Pennick's second legal-sufficiency question: Was the ditch in which the highly intoxicated Pennick was found a public place?**

Pennick also contends that the ditch in which police found him was not a "public place" because "[t]he ditch is clearly on an individual's

15

private property." Pennick's Brief, p. 14. The State does not understand Pennick to contest the legal sufficiency of the "operation" evidence.

A "public place" is "any place to which the public or a substantial group of the public has access and includes, but is not limited, to streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." TEX. PENAL CODE § 1.07(a)(40) (West Supp. 2014). If the public has any access to the place in question, it is a public place within the meaning of the Penal Code. *Woodruff v. State*, 899 S.W.2d 443, 445 (Tex. App.—Austin 1995, pet. ref'd). Whether a place is public is a fact issue for the trier. *Kirtley v. State*, 585 S.W.2d 724, 276 (Tex. Crim. App 1979); *Sanchez-Tapia v. State*, No. 07-14-00203-CR, 2015 Tex. App. LEXIS 2273, at *9 (Tex. App.—Amarillo March 10, 2015, pet. ref'd) (mem. op., not designated for publication).

Nothing shows that the ditch in which Pennick was found was located on private property, as he now contends. And location on private property would not preclude the ditch's meeting the Penal Code's definition of public place because, as testimony and State's Exhibit #4

16

show, any member of the public could readily access it, just as Pennick did. *See Woodruff*, 899 S.W.2d at 445; *Kindle v. State*, No. 05-01-01818-CR, 2003 Tex. App. LEXIS 9774, at *9 (Tex. App.—Dallas Nov. 18, 2003, no pet.) (mem. op., not designated for publication) (finding that the parking lot of a privately owned hotel can be considered a "public place" because the public has access to it). Nuckols testified that the ditch was accessible without needing to go through a gate. 3 RR 32, 47–48; *see Perry v. State*, 991 S.W.2d 50, 52 (Tex. App.—Fort Worth 1998, pet. ref'd) (finding that a park that is closed at night is still "public" when there is no gate barring entry). Deputy Orts testified that the area where she found Pennick "is accessible by the public." 3 RR 59. From this evidence, any rational trier could have found that the ditch was a public place.

## PRAYER

For these reasons, the Travis County Attorney, on behalf of the State of Texas, asks this Court to overrule the points of error and affirm the judgment of conviction for driving while intoxicated.

Respectfully submitted,

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

_____
Giselle Horton
Assistant Travis County Attorney
State Bar Number 10018000
Post Office Box 1748
Austin, Texas 78767
Telephone: (512) 854-9415
TCAppellate@traviscountytx.gov

ATTORNEYS FOR THE STATE OF TEXAS

18

**CERTIFICATE OF COMPLIANCE**

Relying on Corel WordPerfect's word-count function, I certify that this document complies with the word-count limitations of TEX. R. APP. P. 9.4. The document (counting all of its parts except for the appendices) contains 3734 words.

_____

Giselle Horton

**CERTIFICATE OF SERVICE**

I certify that I have sent a complete and legible copy of this State's Brief via electronic transmission, to Mr. Pennick's attorney of record, Mr. David W. Crawford, at dcrawford@crawfordcruz.com, on or before October 29, 2015.

_____

Giselle Horton
Assistant Travis County Attorney